## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |  |
|---|---|---|
| DEBRA MONSERRATE, et al.,<br>on behalf of themselves and others<br>similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HARTFORD FIRE INSURANCE<br>COMPANY, a foreign for<br>profit corporation,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 6:14-cv-149-Orl-18GJK |

## DEFENDANT HARTFORD FIRE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE CLASS [DKT. 119] AND INCORPORATED MEMORANDUM OF LAW

Defendant, HARTFORD FIRE INSURANCE COMPANY, through its undersigned counsel and pursuant to Local Rule 3.01(d), files this, its opposition to Plaintiffs' Motion for Conditional Certification of Collective Class [Dkt. 119] (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs' Motion is time-barred because it was brought after the expiration of the Court-ordered deadline to add parties. The Motion should be denied on this basis alone.

Additionally, court-supervised notice is not appropriate for Plaintiffs' proposed national class of "well in excess of 1,000" insurance claims adjusters. As an initial matter, Plaintiffs have failed to establish sufficient interest in this lawsuit. This case began with 9 Plaintiffs and, after 15 months of litigation, a total of 11 Plaintiffs remain. These 11

Plaintiffs have failed to provide a single consent to join or evidence of interest in this action outside of the Lake Mary, Florida location in which all of the Plaintiffs worked.

Moreover, Plaintiffs' cookie-cutter affidavits and conclusory deposition testimony fail to meet their burden of establishing that Plaintiffs are similarly-situated to the putative class. Plaintiffs seek court-supervised notice to a class of employees whom Plaintiffs deem "Analysts." Plaintiffs' overly-simplified description of the class omits the fact that these "Analysts" allegedly worked in 26 different job titles, some of which were classified as non-exempt and paid overtime, in seven different locations or who worked from home[1], during the three-year limitations period. Even crediting their deposition testimony as accurate, Plaintiffs only held 11 out of the 26 alleged titles. Indeed, Plaintiffs do not provide a shred of evidence of the job duties required in the 15 job titles that they did not hold, or of the job duties of any "Analysts" who work in any location other than Lake Mary.

Furthermore, many of the putative class members were classified as exempt pursuant to the FLSA's administrative employee exemption. The analysis required to prove (or, from the Plaintiffs' perspective, to disprove) the exemption's application to these employees is highly individualized and fact-intensive, such that collective treatment would be completely unworkable. Under these circumstances, Plaintiffs' request to conditionally certify a broad class should be denied.

## FACTUAL BACKGROUND

Plaintiffs seek court-supervised notice to persons holding or having held 26 alleged job titles, including: Short Term Disability Analysts I, II, III and IV; Long Term Disability

---

[1] *See,* Affidavit of Maria Fazzino, ¶7 (referred to herein as "Fazzino Aff."), attached hereto and filed herewith.

Analysts I, II, III, IV and V; Claims Examiners I, II and III; Ability Analyst Segment I, Ability Analyst Segment II, Ability Analyst Segment III, Ability Analyst Segment IV, Ability Analyst IV, LTD Sr. Ability Analyst, Segment II Claims Analyst, LTD Claims Examiner III, LTD Segment II Analyst, Senior Ability Analyst, Senior Ability Analyst IV, Senior Ability Analyst II, CAR I Analyst and CAR Specialist Analyst.  [Dkt. 119, p.2, fn. 3]. However, the Plaintiffs worked in only a few of these positions during the three years preceding the filing of this lawsuit.[2]  Moreover, all of the Plaintiffs worked in Lake Mary, Florida.[3]  *Id*., ¶5.  A summary of the positions for which Plaintiffs seek certification, the positions Plaintiffs claimed to have held[4] and their pay classification[5] follows:

| Position | Plaintiffs Holding Position | Classification of Position |
|---|---|---|
| Short-Term Disability Analyst I | None | Non-Exempt |

---

[2]     Defendant contends a two-year statute of limitations is applicable to this action and assumes a three-year period here solely for sake of argument.  In any case, a review of Defendant's records reveals that, during the three-year period preceding the lawsuit, Plaintiff's held only 7 positions, *i.e.*, LTD Claims Analyst III, LTD Claims Analyst IV, LTD Claims Analyst V, Claim Ability Analyst, Sr. Claim Ability Analyst, CAR Specialty Analyst and LTD Sr. Claim Ability Analyst.  *See*, Fazzino Aff., ¶4.

[3]     Defendant's Central Florida location was located in Maitland and later moved to Lake Mary.  While some of the Plaintiffs may have worked in Maitland, the Lake Mary and Maitland locations were in reality a single work location and, therefore, are referred to herein as "Lake Mary."

[4]     As noted in footnote 1 above, Plaintiffs never held some of the alleged positions.

[5]     Defendant notes that a number of the positions which Plaintiffs seek to have certified as part of this action do not and have never existed.  Accordingly, no pay classification exists for such positions.  Defendant has indicated the exempt or non-exempt status of the positions it is able to identify as having existed during the relevant time period.  Some of the titles of these positions differ slightly than those utilized by Plaintiffs.  *See*, Fazzino Aff. ¶6.

| | | |
|---|---|---|
| Short-Term Disability Analyst II | None | Non-Exempt |
| Short-Term Disability Analyst III | None | Exempt |
| Short-Term Disability Analyst IV | None | |
| Long-Term Disability Analyst I | None | Non-Exempt |
| Long-Term Disability Analyst II | None | Non-Exempt |
| Long-Term Disability Analyst III | Fernandez [Dkt. 121-1/36:2-9; 45:18-25; 46:1-3; Dkt. 120-1]; Elkins [Dkt. 121-2/12:2-4; 20-23; Dkt. 120-2]; Faber [Dkt. 121-10/15:21-25]; Harris [Dkt. 121-7; 15:11-20; 16:22-25] | Exempt |
| Long-Term Disability Analyst IV | Smith [Dkt. 121-5/10:13-18; 14:1-17; Dkt. 120-4]; Edwards [Dkt. 121-9/18:16-20] | Exempt |
| Long-Term Disability Analyst V | Birchell [Dkt. 121-4/13:15-25; 14:1-8; 28:20-25; 29:1-3]; Craft [Dkt. 121-8/16:18-25; 20:19-23] | Exempt |
| Claims Examiners I | None | |
| Claims Examiners II | None | |
| Claims Examiners III | None | |
| Ability Analyst Segment I | None | |
| Ability Analyst Segment II | None | |
| Ability Analyst Segment III | Faber [Dkt. 121-10/15:21-25]; Harris [Dkt. 121-7; 15:11-20; 16:22-25] | |
| Ability Analyst Segment IV | None | |
| Ability Analyst IV | Edwards [Dkt. 121-9/18:16-20]; Monserrate [Dkt. 121-3/20:17- | |

| | | |
|---|---|---|
| | 21; 22:13-15] | |
| LTD Senior Ability Analyst | Elkins [Dkt. 121-2/12:2-4; 20-23; Dkt. 120-2] | Exempt |
| Segment II Claims Analyst | Smith [Dkt. 121-5/10:13-18; 14:1-17; Dkt. 120-4] | |
| LTD Claims Examiner III | None | Exempt |
| LTD Segment II Analyst | None | |
| Senior Ability Analyst | Fernandez [Dkt. 121-1/36:2-9; 45:18-25; 46:1-3; Dkt. 120-1]; Elkins [Dkt. 121-2/12:2-4; 20-23; Dkt. 120-2] | Exempt |
| Senior Ability Analyst IV | None | |
| Senior Ability Analyst II | Harris [Dkt. 121-7/17:9-19] | |
| Continuing Ability Review Analyst I | Birchell [Dkt. 121-4/13:15-25; 14:1-8; 28:20-25; 29:1-3]; Rudgers [Dkt. 121-6/24:4-14; Dkt. 120-5] | |
| Continuing Ability Review Specialist Analyst | Rudgers [Dkt. 121-6/24:4-14; Dkt. 120-5] | Exempt |

Although Plaintiffs allege in the Motion that all 26 of the alleged positions are similarly situated, Plaintiffs' concessions in deposition contradict those allegations. For example, Birchell claims that, as an LTD Claims Analyst V, she received more complex claims than those handled by other analysts. [Dkt. 121-4/29:14-16]. Craft similarly claims that, as an LTD Claims Analyst V, she had more experience than persons holding lower claims analyst positions. [Dkt. 121-8/21:5-13]. According to Rudgers, his job was to review claims for long term disability benefits that had already been approved by others in order to

determine if benefits could be terminated.  [Dkt. 121-6/26:7-16].  The annual salaries paid to Plaintiffs ranged from $40,000 to $67,100.   [Dkt. 121-3/22:18-23; 121-4/42:16-20; 121-8/15:8-12; 121-9/15:9-15; 121-10/16:6-14; 121-7/15:21-25; 16:1-2; 121-6/71:12-16; 121-5/10:22-25; 121-1/16:15-17; 121-1/16:15-17].   Significantly, Monserrate has already received payment from Defendant for overtime compensation.  [Dkt. 121-3/107:1-22].

## LEGAL ANALYSIS

## I.    PLAINTIFFS' MOTION IS TIME BARRED.

In the parties' Case Management Report [Dkt. 83], Plaintiffs and Defendant proposed a deadline of April 17, 2015 to add parties and file a Motion for Conditional Certification. On February 4, 2015, this Court entered a Case Management and Scheduling Order "[h]aving considered the case management report filed by the parties" and "controlling the subsequent course of this proceeding."   Therein, the Court established a deadline of March 6, 2015 for any motion to add parties.  The Motion was filed on April 17, 2015 and should be denied as untimely.  *See, Quijano, et al. v. Tuffy Associates Corp*., 2014 U.S. Dist. LEXIS 116607, *5 (M.D. Fla. 2014) (finding "conditional certification is no longer possible" following deadline for joinder or amendment and striking opt-in notices), *citing*, *Gallender v. Empire Fire and Marine Ins. Co.*, 2007 U.S. Dist. LEXIS 7127 (S.D. Miss. 2007) (applying §216(b) analysis in ADEA case and holding that, "Since the deadline for filing a motion for joinder has passed, so too has the plaintiff's ability to file for certification of a collective action."). Accordingly, for this reason alone, Plaintiffs' Motion should be denied because it is untimely.

## II.     THE STANDARD FOR CONDITIONAL CERTIFICATION.

"Court-authorized notice in this case would function as little more than a fishing expedition." *Rappaport v. Embarq Mgmt. Co.,* 2007 WL 4482581, at *4-5 (M.D. Fla. Dec. 18, 2007) (denying conditional certification of national putative class because "[t]he six affidavits Plaintiffs have submitted do not provide any support for this extraordinary request.").  In order to proceed as a collective action on behalf of others, the plaintiff must overcome procedural hurdles designed to ensure that a collective action is appropriate for the specific case.  Courts in the Middle District of Florida typically use the two-step process set forth by the Eleventh Circuit in *Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1219 (11th Cir. 2001) to certify an FLSA collective action.  *Strickland v. Wyndham*, Case No. 6:13-cv-01000-JA-GJK, slip op. 17, *8 (M.D. Fla. May 28, 2014) (Kelly, J.) (internal citations omitted).  The first stage ("notice" stage or "conditional certification") requires Plaintiff to demonstrate the existence of: (1) a sufficient number of plaintiffs who desire to proceed; and (2) similarly situated plaintiffs with respect to their jobs and pay.  *Id*., at *9.  While "the notice stage is determined using a "fairly lenient standard," which is not particularly stringent or heavy," the plaintiff's burden of proof is "not invisible."  *Id.*

## III.     PLAINTIFFS FAIL TO ESTABLISH SUFFICIENT INTEREST IN THIS LAWSUIT.

The named Plaintiffs "must show that there are other employees or former employees that desire to 'opt-in'" to the lawsuit.  *Palacios v. Boehringer Ingelheim Pharms.*, 2011 U.S. Dist. LEXIS 92002, *11-12 (S.D. Fla. Apr. 19, 2011) (citing cases).  Over 15 months after nine named Plaintiffs initiated this action, the claims of only 11 individuals remain before

this Court.[6]   Plaintiffs fail to meet this requirement, since the putative class (of "well in excess of 1,000 individuals) has demonstrated no real interest in this lawsuit.  Putting aside that Plaintiffs failed to demonstrate interest in general, Plaintiffs have not established that any interest in this lawsuit exists outside of the Lake Mary facility where they worked.  In fact, five of the six affidavits filed in support of the Motion attest only to alleged interest in the lawsuit among persons who "worked for the Defendant in the State of Florida."  [Dkt. 120-2, 120-3, 120-4, 120-5 and 120-6].  The sixth affidavit cryptically refers to alleged interest by a person or persons employed by Defendant in Illinois [Dkt.120-1], even though none of the alleged 26 positions were located in Illinois.  *See* Fazzino Aff. ¶7.  Yet, "out-of-court statements that other employees wish to opt-in is inadmissible hearsay" and plaintiffs' "unsupported belief that other employees may join the suit" is also insufficient.  *Palacios*, 2011 U.S. Dist. LEXIS 92002, *12-13 (finding plaintiff failed to present evidence that other employees desired to opt-in) (citing cases).

In a case where plaintiffs sought to represent only a *statewide* class and submitted consents to join from 12 individuals, all of whom worked in Orlando, this Court found that the plaintiffs established interest in the lawsuit as to Orlando <u>only</u>.  *Strickland*, slip op. 17, at *18 (Report and recommendation to deny conditional certification); *see also Thedford v. Drive In of Evansville*, 2014 U.S. Dist. LEXIS 154734, *19-20 (M.D. Ala. Oct. 31, 2014) (making "no assumption that employees outside" of the two restaurants from which consents

---

[6]     The claims of Susan O'Hearn, Farrell Prudent and Carmen Flores are now in arbitration [Dkt. 85] and the claims of Pamela Ward, Arnella Moore, Karen Annunziata and Stefanie Francis have been withdrawn [Dkt. 54, 92, 106 and 118].  Reid Maybeck, one of the remaining 11 claimants, is deceased.

to join were filed were interested in joining the lawsuit).  While putative class members have had over 15 months to opt in to a lawsuit pending in their own backyard, they have failed to do so.  *See Kubiak v. S.W. Cowboy, Inc.*, 2014 U.S. Dist. LEXIS 80225 (M.D. Fla. 2014) (insufficient interest where 8 individuals from a class of 150-200 employees filed consents to join in 18 months of litigation).

Plaintiffs' reliance on *Beck v. Desoto Health and Rehab.* [Dkt. 119, pp. 12-13] is easily distinguishable because there were only ***eight to ten people in the entire class***.  Case No. 2:06-cv-00226-MMH-DNF, Doc. 32, slip op. at 3 (M.D. Fla. Jan. 8, 2007).  Here, Plaintiffs seek to represent "well in excess of 1,000 employees."  [Dkt. 119, p. 4].  Plaintiffs' reliance on *Dietrich* [Dkt. 119, p. 12] is even more off the mark since Iowa courts, unlike those in Florida, do not require evidence that a sufficient number of plaintiffs desire to proceed in the collective action.  Here, Plaintiffs fail to establish sufficient interest in the lawsuit to warrant conditional certification locally, much less on a national basis.

## IV.   PLAINTIFFS FAIL TO SATISFY THE "SIMILARLY SITUATED" STANDARD.

"Courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification at the notice stage where the plaintiffs have attempted to certify a broad putative class based on conclusory allegations of a few employees and/or where divergent factual circumstances of each claim predominate."  *Strickland,* slip op. at *10, citing, *Chalker v. Burlington Coat Factory of Fla.*, 2013 U.S. Dist. LEXIS 159628, *3 (M.D. Fla. Nov. 7, 2013) (citing authority)*; see also, Gomez v. United Forming, Inc.*, 2009 U.S. Dist. LEXIS 101804, *2 (M.D. Fla. Oct. 15, 2009).  Indeed, "[w]here a collective action would not serve the interests of judicial economy, plaintiffs should not be permitted to

request court-supervised notice as a tool for drumming-up business." *Robinson v. Dolgencorp*, 2006 U.S. Dist. LEXIS 85471, *25 (M.D. Fla. Nov. 13, 2006).

    **A.**    <u>**Plaintiffs Have Not Met Their Burden Of Establishing That Similarly-Situated Individuals Exist**</u>.

        1.    <u>The Court Should Lend Little Weight To Plaintiffs' Conclusory Affidavits</u>.

Although the burden may be "lenient," it is still *Plaintiffs'* burden to establish that they are similarly situated both to each other and to the putative class.  Most of the authority upon which Plaintiffs rely is from courts outside of the Eleventh Circuit.  While this case law may be informative, it is telling that Plaintiffs have not been able to locate a case within this Circuit that supports their position that national certification is warranted under the facts of this matter.  As this Court noted in *Strickland*, courts in the Eleventh Circuit routinely deny certification when, as here, the plaintiffs have failed to make a basic showing that similarity exists between their employment circumstances and those of the broad class that they seek to represent.  *Strickland*, slip op. at *10; *See also Tussing v. Quality Res.*, 2009 U.S. Dist. LEXIS 110190, *7-8 (M.D. Fla. Nov. 25, 2009) (finding that six nearly-identical affidavits that conclusorily attempted to draw similarities between all "customer service representative" positions did not justify certification); *Cartner v. Hewitt Assocs.*, 2009 U.S. Dist. LEXIS 97595, *6 (M.D. Fla. Oct. 7, 2009) (conclusory statements in affidavits of similarly situated standard are not enough); *Prince v. Cato Corp.*, 2015 U.S. Dist. LEXIS 28917, *22 (M.D. Ala. Mar. 10, 2015) (nationwide certification not warranted when the declarants' affidavits relied on speculation and hearsay regarding the class' job duties and the declarations failed to: (1) identify the managers with whom the plaintiffs discussed job duties; (2) specify how

many other managers each declarant spoke to; and (3) mention in what state, or states, these managers worked).  Clearly, Plaintiffs' cookie-cutter affidavits and conclusory affidavits do not meet Plaintiffs' burden of establishing that they are similarly-situated to the putative class.

    2.  <u>Plaintiffs Provide No Evidence That They Are Similarly-Situated To Employees In Other Job Titles Or Locations Other Than Lake Mary, Florida</u>.

Similar to Plaintiffs here, the plaintiff in *Creel v. Tuesday Morning* attempted to certify a national collective action of more than 1,250 store managers.  *See* 2013 U.S. Dist. LEXIS 64090, *14 (M.D. Ala. May 6, 2013).  The plaintiff submitted her own deposition testimony and affidavits from four other store managers who worked in 2 states in support of her claims that a national class was appropriate.  *Id*.  The court denied certification, stating that the evidence submitted by the plaintiff did "not provide an adequate platform from which to make the grand leap to a national collective action."  *Id*.

Similarly, in *Pickering v. Lorillard Tobacco*, the parties conducted four months of discovery to evaluate the appropriateness of certification.  2012 U.S. Dist. LEXIS 10421, *22 (M.D. Ala. Jan. 30, 2012).  The court ultimately denied national certification on the grounds that: (1) the plaintiff produced two affidavits, both from his region, that failed to mention the duties of sales representatives in other regions; (2) the plaintiff provided "scant evidence" that the alleged unlawful policy of misclassifying sales representatives as exempt actually resulted in sales representatives being denied overtime pay for hours worked over 40 in a work week; and (3) a standardized job description is insufficient to analyze the nature of each employee's job duties, and the degree to which the plaintiff's job duties could be applied to

all other employees in the putative class.  *Id*. at \*29-35; *see also Gomez*, 2009 U.S. Dist. LEXIS 101804, \*5-6 (declining nationwide conditional certification when the plaintiff failed to include a single affidavit from a job site other than the defendant's location in Orlando); *Latorture v. Fast Payday Loans*, 2010 U.S. Dist. LEXIS 145346, \*5, 7 (M.D. Fla. Feb. 11, 2010) (denying conditional certification when the plaintiffs were limited to a particular area).

### 3. Plaintiffs' Proposed Class Is Overbroad And Not Similarly Situated Because It Includes Non-Exempt "Analysts."

"[T]he mixing of both exempt and non-exempt employees in a class does not lend itself to proceeding by way of a conditional class because it is overbroad." *Tussing*, 2009 U.S. Dist. LEXIS 110190, \*9; *See also Tyler v. Payless Shoe Source*, 2005 U.S. Dist. LEXIS 31682, \*13 (M.D. Ala. Nov. 23, 2005) (denying certification because "not all managers are paid in the same way); *Butler-Jones v. Sterling Casino Lines, L.P.*, 2008 WL 5274384, at \*7 (M.D. Fla. Dec. 18, 2008) (proposed class is overbroad because exempt and non-exempt employees are not "substantially similar").  Here, Plaintiffs' proposed class includes at least four job titles that were classified as non-exempt and paid overtime during the limitations period.  Clearly, Plaintiffs, who allege they were misclassified, are not similarly situated to these individuals.

Even assuming, *arguendo*, everyone in the putative class was classified as exempt, "[t]he mere classification of a group of employees — even a large or nationwide group — as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Palacios*, 2011 U.S. Dist. LEXIS 92002, \*19; *see also*

*Ramos v. Burger King*, 2011 U.S. Dist. LEXIS 115653, *5 (M.D. Fla. Oct. 6, 2011) ("Plaintiffs rely almost exclusively on purported common job titles to request certification").

Here, Plaintiffs attempt to certify a class "well in excess of 1,000" employees in over 26 alleged positions (some exempt, some non-exempt) based on the limited experiences of a few employees who worked in Lake Mary, Florida.  Plaintiffs are relying on nothing more than Plaintiffs' belief that these positions were classified as exempt, which is erroneous. Neither the affidavits filed in support of the Motion (two of whom are from individuals who are no longer Plaintiffs or Opt Ins in this lawsuit[7]), nor Plaintiffs' deposition testimony, indicate that Plaintiffs have any knowledge of the job duties performed by or the compensation paid to "Analysts" in positions in which they did not work, including those who work in different levels of the same position.  *See Cruz v. Lawson Software*, 764 F. Supp. 2d 1050, 1059 (D. Minn. 2011) (differences in job duties among levels of employees with the same job title made certification untenable).  Indeed, Plaintiffs' lack of knowledge is evidenced by the fact that their proposed class *includes job titles that do not exist and others that are classified as non-exempt*.

    4.   <u>Plaintiffs' Proposed Collective Is Vague and Susceptible to Shifting Theories of Liability</u>.

The collective as described in Plaintiffs' proposed notice is improper.  In relevant part, Plaintiffs define the term "Analyst" as follows: "The term "Analyst" means all persons who have been, are, *or in the future will be employed* by the Defendant in any job whose title is or was referred to by any of the following titles, and employees who performed

---

[7]    Carmen Flores and Stephanie Francis, whose affidavits were filed in support of the Motion [Dkt. 120-3 and 120-6] are no longer parties to this lawsuit.  [Dkt. 85 and 118].

substantially the same work as employees with those titles (*discovery may reveal additional titles and employees that should be included*)…"  [Dkt. 119-1, p. 1, n. 1; 119-1, p. 4, n. 1] (emphasis added).  As discussed above, some of the job titles listed by Plaintiffs do not exist. Moreover, Plaintiffs provide no support for the idea that individuals who may work as "Analysts" *in the future* may be included in the class.  Put simply, even though this case has been pending for 15 months, Plaintiffs still do not have any specific or workable definition of the putative class they seek to represent.  This is yet another example of how their proposed class is utterly unworkable, because they seek to include individuals who are not even part of the class as of the date that notice is sent.  Similarly, Plaintiffs' suggestion that further discovery may reveal additional titles and employees that should be included in the class is ridiculous.  Plaintiffs are under a duty to identify a workable class without guesswork by the Court or the Defendant as to who may be included in the potential class.  *See Strickland*, slip op. at *19 (finding that the proposed class was not similarly situated because the class proposed in the notice was overbroad – "the proposed notice would not result in the efficient resolution of common issues of fact and law, and it would reasonably require the Defendants to continually respond to multiple, shifting theories of liability"), *citing Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (collective action intended to promote efficient resolution of common issues of fact and law in a single proceeding) and *Hart v. JPMorgan Chase*, 2012 U.S. Dist. LEXIS 175983, *6 (M.D. Fla. Dec. 12, 2012) (unfair to require defendant to respond to shifting theories of liability).

Further, Plaintiffs provide no applicable legal support in the context of FLSA misclassification cases.  Not only are most of Plaintiffs' cited cases out of this circuit, but the

cited cases are easily distinguishable.  For example, Plaintiffs cite several decisions that purportedly support their proposition that court-supervised notice is proper "where the titles of the plaintiffs and employees in the class differ."  However, these cases all alleged one or more unlawful *policies* that were applied across multiple job titles.[8]  As such, Plaintiffs' legal authority does not support the proposition that collective action certification is appropriate when liability would require an in-depth analysis of the job duties of "well in excess of 1,000" employees in numerous job positions.  Furthermore, the other cases that Plaintiffs cite are out of this circuit and inapposite because, even where a large class was certified, only one or two job titles were implicated.[9]

In sum, Plaintiffs have utterly failed to meet their burden of establishing that they are similarly-situated to employees who allegedly work in 26 different positions in seven locations throughout the United States.

---

[8]        *See, e.g., Stuven v Texas De Brazil*, 2013 U.S. Dist. LEXIS 22240, *3 (M.D. Fla. Feb. 19, 2013) (plaintiffs alleged that they were required to pay for uniforms and unlawfully charged for walk-out customers); *Lujan v. Cabana Mgmt.*, 2011 U.S. Dist. LEXIS 9542, *5-6 (E.D.N.Y. Feb. 1, 2011) (allegations that overtime was paid at the straight-time rate, time shaving, and requirements to use tips to cover losses); *Realite v. Ark Rests.*, 7 F. Supp. 2d 303, 304 (S.D.N.Y. 1998) (plaintiffs alleged, *inter alia*, that the employer paid their hourly employees a "shift rate" or "weekly rate" regardless of the number of hours actually worked, failed to pay employees overtime, required employees to work "off the clock," improperly required service employees to share their tips with non-service employees, failed to reimburse employees for uniform purchases and maintenance expenses, and improperly denied employees meal breaks or vacation benefits); *Berger v Cleveland Clinic*, 2007 U.S. Dist. LEXIS 76593, *1 (N.D. Ohio Sept. 29, 2007) (uncompensated meal periods); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 388 (W.D.N.Y. Feb. 4, 2005) (improper pay deductions).

[9]        *See, e.g. Holbrook v. Smith & Hawken*, 246 F.R.D. 103 (D. Conn. 2007) (assistant store managers); *Rubery v. Buth Na-Bodhaige*, 569 F. Supp. 2d 334 (W.D.N.Y. 2008) (store managers); *Chowdhury v. Duane Reade*, 2007 U.S. Dist. LEXIS 73853, *1 (S.D.N.Y. Oct. 7, 2007) (daytime and evening assistant store managers).

**B.    The Court Should Deny Certification Because Determining The Discretion And Judgment Exercised By The Exempt Putative Class Members Would Require Individualized, Fact-Intensive Analysis That Is Antithetical To Collective Treatment.**

The need for individualized inquiries would contravene the basic theory of judicial economy upon which the certification of collective actions is based.  *Strickland*, slip op. at *23, quoting *West v. Verizon Commn's*, 2009 U.S. Dist. LEXIS 82665, *12 (M.D. Fla. July 29, 2009) and *Hart*, 2012 U.S. Dist. LEXIS 175983, *16-18.  The determination of whether an employee is exempt under the FLSA is exactly the type of fact intensive inquiry that makes collective treatment unworkable.

In *Holt v. Rite Aid*, the court denied certification at the notice stage based on its finding that certification would require the court to inquire at the second stage as to the daily tasks of each assistant store manager and store manager that were included in the putative class.  *See* 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004).  Accordingly, the court was "not satisfied that conditionally certifying a nationwide collective action, or even a regional collective action, [would] partake of the economy of scale envisioned by the FLSA collective action procedure."  *Id.* at 1275; *see also Ramos,* 2011 U.S. Dist. LEXIS 115653, *2 ("assistant managers and general managers perform significant managerial duties as their primary job function, and [ ] the managers' roles vary depending upon the size of the restaurant, volume of sales, discretion and experience level of the managers, and the restaurant's hours of operation").[10]

---

[10]    Courts in other Circuits have also recognized the inherent difficulty in treating masses of employees as a class when liability requires a detailed analysis of their daily job responsibilities. *See, e.g., Green v. Harbor Freight Tools*, 888 F. Supp. 2d 1088, 1103 (D. Kan. 2012); *Babin v. Stantec*, 2010 U.S. Dist. LEXIS 88009, *10-11 (E.D. Pa. Aug. 25,

Here, many of the positions that Plaintiffs seek to notify have been classified as administratively exempt.  In order to analyze the application of the administrative employee exemption, the parties will have to litigate whether each of the putative class members' primary duties required the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(3).  This is not a simple analysis, as the regulation lists <u>ten</u> separate factors that impact whether an employee is administratively exempt.  *See* 29 C.F.R. § 541.202(b).  A further analysis must be made to determine whether the employee has the authority to either make independent choices or recommendations regarding particular courses of action.  *See* 29 C.F.R. § 541.202(c).  The parties also must litigate whether the putative class members' work includes "skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources" versus "performing [ ] mechanical, repetitive, recurrent or routine work."  *See* 29 C.F.R. § 541.202(e).

Moreover, the putative class in this matter consists of insurance claim analysts. Although the Court does not weigh the merits at this stage of the proceedings, it bears noting that DOL's regulations state that "[i]nsurance claims adjusters generally meet the requirements for the administrative exemption [ ] if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating

---

2010); *Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 610-12 (N.D. Cal. 2010); *Keef v. M.A. Mortenson*, 2009 U.S. Dist. LEXIS 14358 ,*7 (D. Minn. Feb. 24, 2009); *Young v. Cerner*, 503 F. Supp. 2d 1226 (W.D. Mo. 2007).

settlements; and making recommendations regarding litigation."  29 C.F.R. § 541.203(a); *see also Talbert v. American Risk*, 405 Fed. App'x 848 (5th Cir. 2010) (summary judgment issued on the administrative exemption's application to plaintiff claims adjuster); *Roe-Midgett v. CC Servs.*, 512 F.3d 865 (7th Cir. 2008) (same); *Miller v. Farmers Ins. Exch.*, 481 F.3d 1119 (9th Cir. 2008) (same); *Hodge v. ClosetMaid Corp.*, 2014 U.S. Dist. LEXIS 45490 (M.D. Fla. Apr. 2, 2014) (engaging in a detailed examination of the record evidence regarding the minutiae of the plaintiff's daily job duties in determining that the administrative exemption applied); *Rock v. Sunbelt Cranes*, 678 F. Supp. 2d 1264, 1270 (M.D. Fla. 2009) (noting that the determination of whether an employee is exempt under the FLSA is a "fact-intensive inquiry").[11]  These are additional inquiries that must be evaluated for each putative class member over and above the factors listed in 29 C.F.R. § 541.202.

In fact, much of Plaintiffs' deposition testimony <u>supports</u> the conclusion that individualized inquiries regarding the amount of discretion and judgment required to perform their daily job functions govern this assessment.  Some of the Plaintiffs had the discretion to award benefits up to $5,000 per month, while others were only permitted to award monthly benefits up to $2,000.   [Dkt. 121-9/24:18-25; 25:1-4; 121-10/26:25; 27:1-1; Dkt. 121-7/31:11-20; Dkt. 121-5/34:1-16; 121-1/25:17-25; Dkt. 121-2/18:8-13].  Some of the Plaintiffs boasted that they handled more complex claims and/or have more experience than other job

---

[11]     In fact, summary judgment was <u>denied</u> in prior litigation between employees represented by Plaintiffs' counsel and Defendant, on the grounds that fact issues remained with regard to whether the employees exercised sufficient discretion and judgment to meet the requirements of the administrative employee exemption.  *See, e.g., Hollinger v. Hartford Fire Ins. Group*, 2012 U.S. Dist. LEXIS 190499, *25 (M.D. Fla. Dec. 10, 2012).  The same detailed analysis would be required for each putative class member, thereby precluding a collective action.

positions in the putative class.  [Dkt. 121-4/29:14-16; 121-8/21:5-13].  Moreover, the fact that the salaries paid to Plaintiffs ranged from $40,000 to $67,100 annually is substantial evidence that the discretion and judgment that Plaintiffs exercised in their daily job duties varied widely.  [Dkt. 121-3/22:18-23; 121-4/42:16-20; 121-8/15:8-12; 121-9/15:9-15; 121-10/16:6-14; 121-7/15:21-25; 16:1-2; 121-6/71:12-16; 121-5/10:22-25; 121-1/16:15-17; 121-1/16:15-17].  Finally, at least one of the Plaintiffs has already received compensation for overtime.  [Dkt. 121-3/107:1-22].

Further, some of the putative collective members worked from home, which will necessitate the analysis of individualized issues of liability and damages, including the number of hours worked by these employees.  In fact, the FLSA has a specific regulation regarding the compensability of overtime for at-home employees that requires additional analysis than that required to litigate the administrative employee exemption.  *See* 29 C.F.R. § 785.23.

In sum, an analysis of every putative class member's daily job duties must be performed to determine whether each of the exempt class members exercised sufficient discretion and judgment to meet the requirements of the administrative employee exemption. This is simply unworkable for a proposed class of "well in excess of 1,000" people who allegedly worked in 26 different job positions in multiple locations over the three-year limitations period.

**C.**     **There Is No Common Evidence To Try This Case As A Collective Action.**

"In addition to determining whether there are other employees that desire to opt in and whether the employees are similar with respect to their job requirements and pay

provisions, courts also assess whether the plaintiff's claims are amenable to generalized evidence." *Palacios*, 2011 U.S. Dist. LEXIS 92002, *19-20 (citations omitted). Here, Plaintiffs made no effort to show the extent to which the proposed class members will rely on common evidence at trial. That is simply because such a showing cannot be made. The dissimilar positions, differing exempt status, over 26 alleged job titles at issue, and the individualized proof required by the administrative exemption would not allow the issues in this case to be resolved through representational evidence, making the case tantamount to conducting multiple trials on the merits, which is the exact antithesis of a collective action. *See Trinh*, 2008 WL 1860161, at *4-5 (refusing to certify a collective action in the absence of common evidence); *Holt v. Rite Aid Corp., supra* at 1272 (denying collective action to store managers and assistant store managers due to inability to use representational proof).

Because Plaintiffs' claims are not amenable to generalized evidence, the Court would not be able to manage the class without potentially prejudicing the parties. In short, collective action treatment would not meet the Supreme Court's enunciated objective of limiting the controversy to one proceeding that efficiently resolves common issues of law and fact. *See Hoffman-La Roche*, 493 U.S. at 170. Furthermore, certifying a collective action in this case would undermine, rather than promote, the purpose of judicial efficiency.

## V.     PLAINTIFFS' MOTION FAILS BECAUSE PLAINTIFFS LACK REPRESENTATIVES FOR MOST OF THE JOB TITLES AT ISSUE.

Plaintiffs do not have an adequate representative for 15 of the alleged positions in which none of the Plaintiffs worked during the three year limitations period. Further proof that Plaintiffs' Motion fails is Plaintiffs' Counsel's improper effort to assume class representative status. [Dkt. 119, pp. 5-6.] Named representatives of a collective action must

be putative class members, not attorneys.  In the Rule 23 context, courts have noted that the class is entitled to a representative who is more than "a key to the courthouse door dispensable once entry has been effected."  *Saylor v. Lindsey*, 456 F.2d 896, 900 (2d Cir. 1972); *see also Singletery v. Equifax Info. Servs.*, 2011 U.S. Dist. LEXIS 156215, *69-70 (N.D. Ala. Sept. 22, 2011) ("Class representatives are not mere ciphers, wholly dependent upon and subvervient to class counsel.").  Although FLSA section 216(b) does not mention adequacy of representation as an enumerated factor, FLSA opt-in cases are representative by nature and a plaintiff, not counsel, must serve as that representative.

## VI.    PLAINTIFFS' PROPOSED NOTICE IS DEFICIENT.

If the Court were to consider granting this motion, Plaintiffs' proposed notice is deficient for several reasons.  As an initial matter, Plaintiffs do not propose a deadline for putative class members to submit consents to join.  However, a notice period of "30-60 days is generally sufficient."  *Steinberg v. TD Bank,* 2012 U.S. Dist. LEXIS 89086, *17, 28 (D.N.J. June 27, 2012) (45 days).  Furthermore, the Notice is inadequate where it fails to state that, if the opt-ins are unsuccessful, they may be responsible for Defendants' litigation costs. *Robbins-Pagel v. William F. Puckett, Inc.*, 2006 U.S. Dist. LEXIS 85253, *8-9 (M.D. Fla. Nov. 22, 2006) ("Any notice, to be approved by this Court, must include a full disclosure of the individuals' rights *and* responsibilities should they decide to opt-in to the suit.").

Plaintiffs' also request notice by three different mechanisms, U.S. Mail, Email, and posting at Defendant's worksite.  Notice through all three methods is redundant, likely to lead to confusion among the putative class members, and unjustified.  Courts generally require only that the defendant provide the proposed class's names and mailing addresses for

notice to be sent by first-class mail.  *Sutton v. Singh*, 2013 U.S. Dist. LEXIS 81162, *11, n. 3 (M.D. Fla. May 2, 2013) (internal citations omitted) ("First class mail is ordinarily sufficient to notify class members who have been identified.").

Finally, should the Court grant the Motion, Defendant requests that the Court issue an Order directing the parties to confer and file a proposed Collective Action Notice excluding the positions that do not exist, the positions that are non-exempt, and the employees who work at home.

<u>**CONCLUSION**</u>

Plaintiffs' Motion is time-barred and should be denied on that basis alone.  Moreover, Plaintiffs failed to demonstrate the existence of a sufficient number of employees who desire to proceed.  In addition, Plaintiffs, who only worked in one location in Florida, fail to present credible evidence  that they are similarly-situated to the enormous, national putative class of "well in excess of 1,000" employees with over 26 alleged job titles, most of which Plaintiffs never held.  For any or all these reasons, the Motion should be denied.

WHEREFORE, Defendant, HARTFORD FIRE INSURANCE COMPANY, respectfully prays this Court will deny Plaintiffs' Motion for Conditional Certification of Collective Class and Issuance of Notice and grant such other relief as the Court deems appropriate.

DATED this 11th day of May, 2015.

Respectfully submitted,

JACKSON LEWIS P.C.
390 North Orange Avenue, Suite 1285
Post Office Box 3389
Orlando, Florida 32802-3389
Telephone:      (407) 246-8440
Facsimile:      (407) 246-8441

By:      */s/ Donald C. Works, III*
     Donald C. Works, III
     Florida Bar No.  340308
     worksd@jacksonlewis.com

     David R. Golder (*Pro Hac Vice*)
     golderd@jacksonlewis.com

Attorneys for Defendant HARTFORD FIRE
INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of May, 2015, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:  Mary E. Lytle, Esquire and David Barszcz, Esquire, Lytle & Barszcz, 543 N. Wymore Road, Suite 109, Maitland, FL 32751.

     */s/ Donald C. Works, III*
     Donald C. Works, III

4835-9614-4163, v.  4

23