**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

DEBRA MONSERRATE; KELLY BIRCHELL; SHAWN CRAFT; VIVIAN EDWARDS; BILL FABER; and REID MAYBECK,

        Plaintiffs,

v.                                          Case No. 6:14-cv-149-Orl-37GJK

HARTFORD FIRE INSURANCE COMPANY,

        Defendant.

## ORDER

This cause is before the Court on the following:

1. Plaintiffs' Motion for Conditional Certification of Collective Class and Issuance of Notice and Incorporated Memorandum of Law (Doc. 119), filed April 17, 2015;

2. Defendant Hartford Fire Insurance Company's Opposition to Plaintiffs' Motion for Conditional Certification of Collective Class [Dkt. 119] and Incorporated Memorandum of Law (Doc. 124), filed May 11, 2015; and

3. Plaintiffs' Reply to Defendants' [sic] Opposition to Plaintiffs' Motion for Conditional Certification (Doc. 128), filed May 25, 2015

Upon consideration, the Court finds that the motion is due to be granted in part and denied in part.

## BACKGROUND

In this Fair Labor Standards Act ("FLSA") action, six named Plaintiffs,[1] all of whom worked as claims analysts for Defendant Hartford Fire Insurance Company, allege that Defendant willfully misclassified them as exempt from the FLSA's overtime provision and correspondingly refused to pay them overtime compensation. (*See* Doc. 51, ¶¶ 3–10, 21.) They now move for conditional certification of a collective class of "Analysts" and for the issuance of notice to potential class members. (Docs. 119, 128.) Defendant opposes the motion. (Doc. 124.) The matter is ripe for adjudication.

## STANDARDS

With few exemptions, the FLSA's overtime provision "requires employers to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week." *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1296 (11th Cir. 2003) (citing 29 U.S.C. § 207(a)(1)). If an employer violates the overtime provision, affected employees may bring an action to recover not only the amount of their "unpaid overtime compensation," but also "an additional equal amount as liquidated damages." *Id.* (citing 29 U.S.C. § 216(b)).

To conserve judicial resources and lower litigants' costs, the FLSA authorizes collective actions against employers accused of violating the overtime provision.[2]

---

[1] The six remaining named Plaintiffs are Debra Monserrate, Kelly Birchell, Shawn Craft, Vivian Edwards, Bill Faber, and Reid Maybeck. (Doc. 51, ¶¶ 5–10.)

[2] "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discussing § 216(b) collective actions in the analogous ADEA context); *see also Prickett*, 349 F.3d at 1297 ("Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed

29 U.S.C. § 216(b). To proceed collectively, at least one employee must act as a named plaintiff and initiate an unpaid-overtime action against the employer, after which other "similarly situated" employees may affirmatively opt in if the district court permits it.[3] *Id.*

Although district courts have wide discretion in determining how to manage an FLSA collective action, *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001), the U.S. Court of Appeals for the Eleventh Circuit has "sanctioned a two-stage procedure," *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).

The first stage is the "notice" or "conditional certification" stage. *Id.* at 1261. At this stage, "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Hipp*, 252 F.3d at 1218. Named plaintiffs "bear the burden of showing a 'reasonable basis' for [their] claim that there are other similarly situated employees" who, if notified, would opt into the action. *Morgan*, 551 F.3d at 1260. "Because the court has minimal evidence" at the notice stage, the reasonable basis standard is "fairly lenient"[4] and "typically results in 'conditional certification' of a

---

violation or violations of the FLSA by a particular employer.").

[3] In this regard, "opt-in" collective actions under § 216(b) differ from "opt-out" class actions under Federal Rule of Civil Procedure 23. *See Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) ("In a Rule 23 class action, each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out. By contrast, a putative plaintiff must affirmatively opt into a § 216(b) action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action." (citations omitted)).

[4] The Eleventh Circuit has also described the reasonable basis standard as "not particularly stringent, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Morgan*, 551 F.3d at 1261 (citations, alterations, and internal quotation marks omitted).

representative class." *Hipp*, 252 F.3d at 1218. "If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery."[5] *Id.*

The second stage is the "decertification" stage, so named because it is triggered by a defendant's motion to decertify the representative class "after discovery is largely complete and the matter is ready for trial." *Id.*

> At this stage, the court has much more information on which to base its decision, and [it] makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

*Id.* The decertification stage is "less lenient" than the notice stage, and named plaintiffs "bear a heavier burden." *Morgan*, 551 F.3d at 1261.

## DISCUSSION

The Court adopts the Eleventh Circuit's two-stage procedure for certification and management of this FLSA collective action. *See Hipp*, 252 F.3d at 1218. At this initial stage then, to prevail on their motion for conditional certification and notice dissemination, the named Plaintiffs must show a reasonable basis for their claim that other employees are: (1) interested in opting into this action; and (2) similarly situated. *Id.* The Court will address each issue in turn.

---

[5] In other words, because similarly situated employees must affirmatively opt into § 216(b) collective actions, *see supra* note 3, district courts cannot *create* a § 216(b) class through certification. *See Morgan*, 551 F.3d at 1259. "Therefore, the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees" so that those employees can "make informed decisions about whether to participate." *Id.* (citation and internal quotation marks omitted).

4

**I.     Interested Employees and Geographical Restrictions**

Named plaintiffs seeking conditional certification of a collective class bear the threshold burden of demonstrating *actual* interest in their action. *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007) ("Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit."). That threshold burden is "not onerous," *Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-cv-1306-J-34JRK, 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014), but where a localized group of plaintiffs seeks a geographically expansive certification, discharging the burden requires more than their "counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs [will] come from other [locations]." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Typically, named plaintiffs demonstrate actual interest by filing affidavits, consents to join, and other evidence from non-named employees who are interested in opting into the action. *See Vondriska*, 564 F. Supp. 2d at 1344; *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004). There is no bright-line rule for how many non-named employees need to express interest, but "[e]xamples of cases where a small number of opt-in plaintiffs satisfied the threshold of interest required for a collective action are numerous." *Kubiak*, 2014 WL 2625181, at *9 (collecting cases).

Here, the six named Plaintiffs—all of whom worked at Defendant's offices in Maitland or Lake Mary, Florida (*see* Doc. 51, ¶¶ 5–10; Doc. 124-1, ¶ 5)—request conditional certification of a "national class of analysts" that is "estimated to be well in excess of 1,000 employees." (Doc. 119, p. 4.) However, they have not provided any

affidavits, consents to join, or other evidence from any non-named employee who worked outside of Defendant's Maitland or Lake Mary offices—let alone outside of the state of Florida—and thus the Court finds that they have not met their threshold burden of demonstrating interest on a national scale. *See Haynes,* 696 F.2d at 887.

That said, the named Plaintiffs have submitted affidavits, consents to join, and supporting deposition testimony from five non-named employees—Paul Harris (Docs. 43, 72-2, 121-7), Nathan Rudgers (Docs. 45, 72-3, 120-5, 121-6), Laura Smith (Docs. 74, 115, 120-6), Amy Fernandez (Docs. 81, 88, 120-2, 121-1), and Antionette Elkins (Docs. 93, 108, 120-1, 121-2)—who work or worked in Defendant's Maitland and Lake Mary offices and who wish to join this action (Doc.124-1, ¶ 5). When named plaintiffs fail to demonstrate national interest in their action but succeed in demonstrating a more localized interest, district courts have the discretion to conditionally certify an appropriately localized class. *See Ciani v. Talk of the Town Rests., Inc.*, No. 8:14-cv-2197-T-33AEP, 2015 WL 226013, at * (M.D. Fla. May 27, 2015) (limiting the geographic scope of a requested "central Florida" collective action to Tampa, Florida); *Wilson v. GoWaiter Franchise Holdings, LLC*, 22 Wage & Hour Cas. 2d (BNA) 1834, at *7 (N.D.Ga. 2014) (narrowing the geographic scope of a conditionally certified class to a single county); *Moultry v. Cemex, Inc.*, No. 8:07-cv-453-T-26MSS, 2007 WL 2671087, at *1 (M.D. Fla. Sept. 7, 2007) (declining to certify a national collective class, but certifying a collective class geographically limited to Tampa, Florida); *Spencer v. Reg'l Acceptance Corp.*, No. 05-60292-CIV, 2005 WL 5501490, at *2 (S.D. Fla. Aug. 22, 2005) (declining to conditionally certify a national class, but granting conditional certification of a narrower Florida class).

The Court finds that the named Plaintiffs have successfully demonstrated actual interest in a collective action limited to Defendant's locations in Maitland and Lake Mary, Florida. Accordingly, the Court will conditionally certify a localized class if the interested employees in those areas are "similarly situated." *Hipp*, 252 F.3d at 1218.

## II. Similarly Situated Employees

At the notice stage, the "similarly situated" requirement is particularly lenient: "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (citation, alterations, and internal quotation marks omitted). Courts look to "pay provisions" and "job requirements" to determine whether different employment positions are "similar."[6] *Dybach v. Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991).

As addressed above, the named Plaintiffs in this action assert that they worked for Defendant as claims analysts with varying titles. (*See, e.g.*, Doc. 51, ¶ 3.) In terms of pay provisions, Plaintiffs assert that they were salaried and, despite routinely working more than forty hours per week, they were not paid overtime compensation. (*Id.* ¶ 16; Doc. 49-1, ¶ 5; Doc. 49-2, ¶ 5; Doc. 49-3, ¶ 5; Doc. 50-1, ¶ 5; Doc. 50-2, ¶ 5; Doc. 50-3, ¶ 5.) In terms of job requirements, Plaintiffs assert that they essentially investigated and analyzed insureds' claims and made adjudicatory recommendations to their supervisors. (*See* Doc. 119, p. 7; *see also* Doc. 49-1, ¶ 4; Doc. 49-2, ¶ 4; Doc. 49-3, ¶ 4; Doc. 50-1, ¶ 4; Doc. 50-2, ¶ 4; Doc. 50-3, ¶ 4.) Importantly though, Plaintiffs maintain that their jobs

---

[6] The "similarly situated" requirement does not necessarily require named plaintiffs to show that they and the potential class members were subjected to a "unified policy, plan, or scheme." *Grayson*, 79 F.3d at 1095.

only superficially required them to exercise discretion and independent judgment; in reality, Plaintiffs used interview scripts and form letters to conduct investigations, and they used comprehensive policy and procedure manuals to analyze claims and make adjudicatory recommendations.[7] (*See, e.g.*, Monserrate Dep., Doc. 121-3, pp. 79:2–86:4; Birchell Dep., Doc. 121-4, pp. 14:19–21:23; Craft Dep., Doc. 121-8, pp. 52:15–54:20, 58:20–59:23; Edwards Dep., Doc. 121-9, pp. 42:2–43:13; Faber Dep., Doc. 121-10, pp. 44:18–47:19.)

Like the named Plaintiffs, the five non-named employees who have expressed interest in opting into this action all worked for Defendant as salaried claims analysts. (Docs. 72-2, 72-3, 88, 108, 115.) Additionally, all assert that they routinely worked more than forty hours per week without being paid overtime compensation. (*See* Harris Dep., Doc. 121-7, pp. 54:24–25; Rugders Dep., Doc. 121-6, pp. 59:9–12; Smith Dep., Doc. 121-5, pp. 30:25–33:21; Fernandez Dep., Doc. 121-1, pp. 49:23–25; Elkins Dep., Doc. 121-2, pp. 38:19–21.) Most importantly, all assert that they used Defendant's canned

---

[7] This last clarification is important because Plaintiffs' FLSA claims, as the Court reads them, turn largely on the applicability of the administrative exemption. *See* 29 U.S.C. § 213(a)(1). Under the administrative exemption, the FLSA's overtime provision does not apply to salaried employees whose "primary duty" involves, *inter alia*, "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). However, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e).

The crux of Plaintiffs' FLSA claims appears to be that Defendant willfully misclassified Plaintiffs as administratively exempt from the overtime provision based on the superficial appearance of discretion in their work, *see* 29 U.S.C. § 541.200(a)(3), when in reality Defendant knew that Plaintiffs did not fall within the administrative exemption because they were only using "skill in applying well-established techniques, procedures or specific standards described in manuals or other sources" that Defendant itself had promulgated, *see* 29 C.F.R. § 541.202(e).

interview scripts, form letters, and comprehensive, flowchart-like manuals to investigate and analyze claims and to make adjudicatory recommendations. (*See, e.g.*, Harris Dep., Doc. 121-7, pp. 21:10–24:6, 24:23–25:8, 28:21–25, 31:11–33:15; Rugders Dep., Doc. 121-6, pp. 33:2–34:11, 54:10–56:13, 71:17–72:9; Fernandez Dep., Doc. 121-1, pp. 19:15–20:24, 34:14–35:18, 64:10–65:13, 86:1–91:13;Elkins Dep., Doc. 121-2, pp. 17:16–18, 41:9–44:23.)[8] In short, the pay provisions and job requirements of the interested, non-named employees' positions are materially similar to those of this action's named Plaintiffs. At the notice stage, that is all that the "similarly situated" standard requires. *Dybach*, 942 F.2d at 1567.

As Plaintiffs have shown a reasonable basis for their claim that similarly situated employees who worked at Defendant's Maitland and Lake Mary offices are interested in opting into this action, the Court will conditionally certify a collective class of "Analysts"[9]

---

[8] Because of Plaintiffs' counsel's slipshod citations (*see* Doc. 119, pp. 7–8 (inserting the same inapposite string citation as support for several disparate propositions)), the Court was forced to parse the 887 pages of deposition transcripts that Plaintiffs filed in order to confirm that Plaintiffs' contentions have some evidentiary support (Doc. 121). To be clear, the Court goes to great lengths to ensure that parties are not prejudiced by their counsel's carelessness, but it will not sift through Plaintiffs' exhibits unguided again. If, at a subsequent stage of this litigation, Plaintiffs' counsel fails to support assertions with pinpoint record citations, the Court may reject those assertions outright.

[9] Plaintiffs contend that Defendant routinely changes its claims analysts' job titles without meaningfully changing their job responsibilities and that, as a result, the term "Analyst" encompasses the following positions:

> Ability Analyst Segment I; Ability Analyst Segment II; Ability Analyst Segment III; Ability Analyst Segment IV; Ability Analyst IV; LTD Sr. Ability Analyst; Segment II Claims Analyst; LTD Claims Examiner III; LTD Segment II Analyst; Senior Ability Analyst; Senior Ability Analyst IV; Senior Ability Analyst II; CAR I Analyst; CAR Specialist Analyst; Short Term Disability Analyst I, Short Term Disability Analyst II, Short Term Disability Analyst III, Short Term Disability Analyst IV, Long Term Disability Analyst I, Long Term Disability Analyst II, Long Term Disability Analyst III, Long Term Disability

who have worked in those offices.

### III.   Contact Information, Notice, and Scheduling

Finally, the named Plaintiffs move for: (1) an order requiring Defendant to produce the potential class members' contact information; and (2) an order authorizing Plaintiffs to distribute a notice and a consent-to-join form to those potential members. (Doc. 119, pp. 5, 17–20); *see also Dybach*, 942 F.2d at 1567 (holding that courts may authorize notice to potential § 216(b) class members to further the FLSA's broad remedial purpose); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (holding that courts may require defendants to produce potential § 216(b) class members' contact information). Upon consideration, the Court finds that Plaintiffs' motions are due to be granted with the following caveats.

With respect to contact-information disclosure, Plaintiffs specifically request an order "requiring Defendant to produce the names, addresses, telephone numbers and emails of all former and present Analysts as well as those who were employed within the 3 years prior to the filing of the Complaint up to trial." (Doc. 119, p. 21.) That request is both temporally and geographically overbroad. Temporally, Plaintiffs' request incorrectly presumes that the filing of their action tolled the three-year[10] statute of limitations not only

---

Analyst IV, Long Term Disability Analyst V, Claims Examiner I, Claims Examiner II, Claims Examiner III.

(*See, e.g.*, Doc. 19, p. 2 n.2.) For conditional certification purposes, the Court accepts Plaintiffs' representation and adopts their definition of the term Analysts. Defendant's factual challenges to the contours of the class (Doc. 124, pp. 3–6) are best left for the decertification stage. *Kubiak*, 2014 WL 2625181, at *7 ("In considering a motion to conditionally certify a class for notification purposes only in a wage and hour dispute, the Court does not review the underlying merits of the case.").

[10] Because Plaintiffs have alleged a willful FLSA violation, the statute of limitations is presumptively three years rather than two. 29 U.S.C. § 255(a).

for their claims, but also for any opt-in plaintiffs' claims. (*See id.*) To the contrary, the statute of limitations for opt-in plaintiffs' claims continues to run until they actually opt into the action. *See Kirk v. Dr. Goodroof, Inc.*, No. 2:14-cv-639-FtM-29CM, 2015 WL 1138445, at *3 (M.D. Fla. Mar. 13, 2005). Accordingly, the Court will require Defendant to disclose the contact information of Analysts employed within three years of the *issuance of this Order* rather than requiring it to disclose the contact information of Analysts employed within three years of this action's commencement. *See Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 8:13-cv-879-T-24MAP, 2013 WL 5954785, at *3 (M.D. Fla. Nov. 7, 2013); *Gutescu v. Carey Int'l, Inc.*, No. 01-4026-CIV-MARTINEZ, 2003 WL 25586749, at *18 (S.D. Fla. July 21, 2003). Geographically, Plaintiffs' request envisions the national class that the Court declined to certify. The Court will accordingly limit Defendant's disclosure requirement to Analysts employed at either its Maitland, Florida location or its Lake Mary, Florida location. In sum then, the Court will require Defendant to disclose the contact information of all Analysts who have worked at its Maitland or Lake Mary locations within three years of the date of this Order.

As for the notice, Plaintiffs have provided a proposed form that requires several revisions. (*See* Doc. 119-1.) First, like Plaintiffs' contact-information request, their proposed notice is geographically and temporally overbroad. (*See id.* at 2.) The Court will permit Plaintiffs to distribute the notice and consent-to-join form to Analysts who worked for Defendant at the Maitland and Lake Mary locations "within the last three years prior to the date the [n]otice is mailed." *Abdul-Rasheed*, 2013 WL 5954785, at *3; *see also Gutescu*, 2003 WL 25586749, at *18 (concluding that notice should only be sent to potential class members who worked for the defendant "within three years from the date

11

of mailing of the notice"). Plaintiffs should tailor the language of the notice and consent-to-join forms accordingly.

Second, Plaintiffs' proposed notice fails to adequately notify potential class members of the risks associated with opting into this action—particularly, the risk that opt-in class members may be responsible for Defendant's litigation costs if Defendant prevails. (*See* Doc. 119-1); *see also* Fed. R. Civ. P. 54(d)(1) (addressing awards of costs to prevailing parties). Before distribution, Plaintiffs must revise their proposed notice to accurately reflect the risks associated with opt-in collective actions. *See Hoffman-La Roche,* 493 U.S. at 171 (requiring notice to be "timely, accurate, and informative"); *Ciani,* 2015 WL 226013, at *5 (requiring notice to potential § 216(b) class members to address both rights and risks).

Third, Plaintiffs' proposed notice does not set an opt-in deadline. (Doc. 119-1.) In light of this action's relatively advanced stage and newly narrowed scope, the Court finds that a thirty-day opt-in deadline is appropriate here. In other words, the notice must reflect that, to opt into this action, potential class members must file a consent-to-join form on or before the thirtieth day after the date that Plaintiffs distribute the notice.

To facilitate the notification process, the Court will permit Plaintiffs to file a revised proposed notice and a revised consent-to-join form. If the Court approves of them, then it will authorize distribution—by U.S. Mail and email[11]—in a separate Order specifying an initial distribution date.

---

[11] The Court denies without prejudice Plaintiffs' motion to require Defendant to post the notice at its offices. (Doc. 119, pp. 17–18); *see also Ciani*, 2015 WL 226013, at *6 (observing that courts typically require class notices to be posted at a defendant's workplace "only after a showing that a defendant has failed to cooperate in the collective action process").

On a last procedural note, because conditional certification may necessitate modification of the Court's Case Management and Scheduling Order (Doc. 113),[12] the parties may file a joint motion to modify the deadlines therein. Failure to file a timely joint motion may result in the Court modifying the Case Management and Scheduling Order *sua sponte.*

## CONCLUSION[13]

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiffs' Motion for Conditional Certification of Collective Class and Issuance of Notice (Doc. 119) is **GRANTED IN PART AND DENIED IN PART**:

    a. The motion is **GRANTED** as follows:

    i. The Court **CONDITIONALLY CERTIFIES** a 29 U.S.C. § 216(b) class of Analysts who have: (1) worked for Defendant at either its Maitland, Florida location or its Lake Mary, Florida location during the three years preceding the Analyst's decision to opt into this action; and (2) worked more than forty hours in a workweek without being paid overtime compensation.

    ii. The Court **APPOINTS** named Plaintiffs Debra Monserrate, Kelly Birchell, Shawn Craft, Vivian Edwards, Bill Faber, and

---

[12] Relatedly, the Court declines Defendant's request to deny Plaintiff's motion for conditional certification as untimely. (*See* Doc. 124, p. 6.)

[13] Any arguments raised by Defendant and not specifically addressed in this Order are rejected without prejudice to their reassertion at the decertification stage.

      Reid Maybeck as class representatives.

  iii.  The Court **DIRECTS** Defendant to disclose to the named Plaintiffs the contact information of all Analysts who have worked at Defendant's Maitland, Florida or Lake Mary, Florida locations during the three years preceding the date of this Order.

  iv.  On or before Tuesday, **July 7, 2015**, the named Plaintiffs are **DIRECTED** to file a revised proposed notice and a revised consent-to-join form, both of which must remedy the deficiencies addressed in this Order. *See supra*, pp. 10–12. Defendant may file an objection to the revised notice and consent-to-join form on or before **July 9, 2015**. The Court will approve or disapprove of the revised filings by separate Order.

 b. In all other respects, the motion is **DENIED**.

2. The parties may file a joint motion for modification of the Court's Case Management and Scheduling Order on or before **July 10, 2015**. Failure to do so may result in the Court revising its Case Management and Scheduling Order *sua sponte*.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 1, 2015.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record